May it please the Court, I'm William D. Davis, here for Appellants Angel Robyn Kellum and Kevin Robb. They are the defendants in a foreclosure suit over a Texas home equity loan. Has the home been foreclosed or are the Robbs still in the home? The Robbs are still in the home. There is a judgment for judicial foreclosure or the alternative for exercise of a power of sale. So is there being evicted imminent or is all this pending what happens here? Well, eviction may or may not occur after a sale if there's not been a sale. And our contention is that the order's in error and actually void. Well, I understand that, but I mean, are they at risk of being removed from their home before we render an opinion in this case? Not to my knowledge. All right. Simplify it then. Pardon me? I said it simplifies the situation then. Yes, Your Honor. We're here on two issues. I did have a bit of an error on page two of the brief. I had enumerated issue number three that should have been removed. There's only two issues. The first issue is whether the trial court erred when it granted Wilmington's motion for summary judgment seeking foreclosure of a Texas home equity loan despite the lack of a constitutionally mandated term required for foreclosure eligibility. I do want to distinguish here. The Texas Supreme Court in Garofalo said that the Constitution doesn't regulate home equity loans. It doesn't require these terms. It only requires them if you want the remedy of foreclosure. Appellees have tried changing our question about whether they're constitutionally mandated. We're only saying it's constitutionally mandated if you want the remedy of foreclosure. And you're saying it's constitutionally mandated even if it's not an agricultural loan? Absolutely, Your Honor. You cannot. In fact, Garofalo starts off, if I may. Is there any case in Texas that's yet said that as extrapolation from Garofalo? I'm not aware of others right now, but Garofalo's pretty clear. The Texas Constitution allows a home equity lender to foreclose on a homestead only if the underlying loan includes specific terms and conditions. That's what it leads with. The Texas Constitution itself starts off with the proposition that a homestead is protected from a forced sale unless the lien falls into one of seven or eight exceptions. So they have the burden of proving that the lien falls into one of the exceptions. And they're claiming it's a Section 50A6 home equity loan. But the recent Supreme Court, for clarification, this case started out before the Wood and Garofalo cases came out last May. We were having to operate under the Priester decision because we were in federal court. We were operating under the Priester decision that had come out in 2013. The Priester decision basically said that a homeowner couldn't challenge the validity of the home equity loan more than four years after origination. The Supreme Court clearly says that's not the case. You can challenge it at any time according to Wood, which is another Supreme Court case that issued the same day. And the Priester decision has been abrogated in the Berry v. Ockwin case that came out last year sometime after Wood and Garofalo. And my clients were the defendants. Our position is the plaintiffs have to prove if they're seeking the relief of foreclosure that they're entitled to the relief of foreclosure. They have to have a foreclosure-eligible loan. They did not plead that the lien was valid. They did not plead the existence of the terms. The original complaint, which was superseded by another complaint, misidentified the mortgagee, the lender. It had attached a deed of trust that identified an instrument that it was not, appeared to be different than the note. When they filed an admitted complaint, they had similar problems with it. But although it's not our burden to prove that the loan is not a home equity loan, in our response to the motion for summary judgment, we pointed out it was missing at least one of the terms required for a home equity loan to be foreclosure-eligible. And absent that term, you cannot have the relief of foreclosure, which is what they sought. And ultimately, the trial court ruled – actually, the trial court really didn't address that issue. They argued about a pleading requirement. But it's our position if you want to have a foreclosure-eligible loan – if you want foreclosure, you need to plead and prove that the loan is foreclosure-eligible, particularly in view of the recent Wood and Groffler decisions. Your view? Well, you also have the notice of acceleration issue. Correct. To me, it's a much stronger issue for you. I hope you're going to reserve enough time to talk about that. I can move on to that, unless you have other questions. Judge Higgins may have had a question. Move on to that. Okay. On the notice of acceleration issue, that would be case dispositive if it was accelerated more than four years prior to the suit. What happened was the loan was originally accelerated, or at least as early, as June 22, 2011, and this lawsuit was filed June 25, 2015. So that's four years and three days. There's a four-year statute of limitations for enforcing a deed of trust once a loan has been accelerated. For the most part, the plaintiff relied on a notice of rescission that was sent to my clients in 2014. However, we didn't agree that they had the unilateral right to rescind. The plaintiff relies on a Texas statute that only came into existence in June of 2015, so it wasn't effective at the time, although they asserted that it was retroactive. There's nothing in the statute to suggest that it's retroactive, and our position was that the loan was accelerated more than four years before the suit was filed. After we filed a recent motion to dismiss on this basis, Wilmington filed an amended complaint. This time they claim, oh, well, the rescission was effective, and now we're accelerating by virtue of filing an amended complaint, because in Texas you have to accelerate before you can foreclose the loan, and so they claim that the filing of the amended complaint served as the acceleration. Well, that's not going to work because the lien has a pre-suit notice requirement, and the section specifically refers to the notice of acceleration having to be provided. And so if your first amended complaint is the notice of acceleration, clearly that wasn't done before the suit was filed. In their motion for summary judgment, they argued something slightly differently. They argued that the original complaint was the notice of acceleration. There's a problem with that, too. It's true that Texas law supports filing of a lawsuit as being the notice of acceleration, but the problem is the deed of trust, which they're seeking to enforce, has a notice of grievance provision that says you will do this before you file a suit. And not only that, it says all notices have to be provided in accordance with paragraph 14, which provides for if you put it in the mail, it's deemed received when it's put in the mail, but in any other method, it's deemed received. The notice has been deemed given when received. Well, the way my clients got notice of it was when they were served, which was clearly after the lawsuit had been filed. So our position was they failed conditions precedent for filing this lawsuit, and we argued that, and the trial court disagreed with us. But prior to the November 2014 rescission notice, your clients had been told they were in default and had to cure several times. They were provided a notice, but that didn't do it. Our position is that didn't do anything under the deed of trust. My clients didn't grant under the deed of trust an opportunity for the lender to over and over again revoke its prior exercise of an option and then come back again. One of the reasons that statute was passed was because it wasn't clear that that was some unilateral right. The statute was passed in 2015, not prior to 2015. And second of all, my clients always had the right to reinstate. Paragraph 18 of the instrument says that they can pay all amounts due as if it were in default, and if they do that, then they have the right to reinstate. That's not something the lender can force them to do by taking this back. So from my client's perspective, nothing really ever changed. They always had the right to reinstate regardless of what the lender did up until the time of foreclosure or judicial foreclosure. Am I oversimplifying that you're saying both under common law and under the lien, once they say original terms are back in place, then there were required to be two notices, but only one occurred? Or is that oversimplifying? I think, if I may clarify for myself, I believe what you're saying is, is once the rescission was given, did they have to then send another notice? Under both lien terms and the law. I believe so, Your Honor, because the statute you're talking about — I'm not disagreeing with you, but do you have a good Texas case on that re-notice requirement if there's an intervening rescission? I have a case. If I can send a letter to the Court, I didn't have it with me. Well, that's just if you know the site, just I'd be appreciative. Okay. I don't know it off the top of my head, but there is a case that says you need a notice again. And second to that, the statute itself says it's restored to the prior non-accelerated state. So if that's the case, you can't say you have a notice of acceleration that isn't acceleration for purposes of the deed of trust, but it's acceleration for purposes of — I mean, I'm sorry, but it constitutes notice for purposes of meeting the pre-suit notice requirement. That's inconsistent. Either pick one position or the other. I don't have much more on those two issues. All right. Thank you, then. You've saved time for rebuttal. Thank you. Mayor? May it please the Court? Counsel Mike Connor for the appellee, Wilmington. To start with the notice of acceleration issue, first of all, 16038 of the Civil Practices and Remedies Code is the statute that was enacted effective June of 2015. And it is, I believe, subject to the analysis that says it's a procedural statute, and procedural statutes are typically given retroactive effect. Texas Supreme Court has said as much in City of Austin v. Whittington back in 2012. Moreover, as we cited in appellee's brief, this Court's Boren decision was on the books, which in turn cited the Kahn case, I believe it was, out of Texas, that there is the unilateral right to rescind. So all of that seems to me, however, to go first to a limitations argument, and I think we're past the limitations argument here. The rescission, first of all, the letter rescinding the last notice of acceleration clearly was less than four years prior to the suit for foreclosure being filed. So I think that takes care of it, whether it be under a retroactive statute, which I would suggest was really a codification of existing law, vis-à-vis Kaplan as cited by this Court in the Boren decision. The more, from our perspective, the more pertinent issue vis-à-vis the acceleration is the one the Court poses, and that is are we or are we not, as the lender required under the loan documents, to get serial notices of default and opportunity to cure when it's absolutely undisputed that there have been already serial notices of default and opportunities to cure, no cure ever having been effected. That circles back to the fact that you gave this note of rescission of acceleration on the 3rd of November 2014. That is correct, Your Honor. We did. That's the fly in the ointment here. Understood. It does appear to be a fly in the ointment. First, let's take that, if we can, from two different perspectives. First of all, that's kind of a contract issue, right? Did we or did we not comply with the contract? We weren't sued for breach of contract. There's no counterclaim for breach of contract. So what's the net effect of this? It was pled as a failure of condition precedent, but so we've got kind of this contractual analysis, and we go to the contract. What the contract says in separate paragraphs is that if you're in default, you're entitled, the borrower is entitled to a notice of that default and an opportunity to cure. There's no dispute that they had notices of the default, and each of these notices of default that's in the record relates to the same and ongoing default, at least initially. It starts with 2011, failure to make payment, and subsequent notices of default, intent to accelerate, notice of acceleration, a withdrawal of that by virtue of the, if you will, boron-type subsequent notice of default so that deaccelerates or unaccelerates the prior one. Take the next step. You do then have this 2012 notice of acceleration, which is then after a change in servicer for the loan was rescinded by a letter. Now, the terms of that rescission letter purport, at least, to do this rescission without prejudice to other rights under the contract, and I can read the language from that. It's from the Record on Appeal at 524. Lender, without prejudice or waiver of any right or remedy available to it by reason of past or future default by borrower, and it does say, I'll concede, other than the specified defaults, hereby rescinds the acceleration of the debt and the maturity of the note. So it's no longer accelerated, but no default has been cured and no default has been waived. I simply don't read this contract, and I believe the trial court, the district court, read it properly when it construed this contract. I don't believe it requires the lender to give serial notices of default and serial opportunities to cure. The paragraph they primarily focus on. Just from a common sense point of view, then, what's the purpose of the note of rescission of acceleration? What's that supposed to do to the borrower? Well, there is a separate provision in this note that speaks to acceleration and notice of acceleration. The acceleration must occur in order to collect the note. It's that kind of note. It's an installment note. And Texas law says that the filing of a lawsuit is sufficient to accelerate. And we've gone through all of those contractual provisions, and we have satisfied those strictly. I do not disagree that it might have been done more neatly, but it complies with the contract. I believe the district court recognized that. Moreover, it might have been done more neatly, but that's, you know, what's the standard, clear and unequivocal? And so in the Ogden case, the borrower's got to know for certainty. There can't be uncertainty. And they get a letter saying, you know, consider this as though no acceleration took place. Correct. I'm not disputing that that did indeed rescind the acceleration. But then they would logically not be aware. They would have no notice that acceleration is taking place. They get it when they get the lawsuit. They're not entitled to it, separate and apart from the function of the filing of the lawsuit, under the terms of this security agreement or the note, the loan at large. They're simply not entitled to yet another. The paragraph they're focused on is a you need to give me notice of default and opportunity to cure before you go and file a lawsuit. There's a whole separate paragraph, paragraph 21 of the security agreement, that speaks to an acceleration issue. No Texas case that you're aware of requires re-notice after rescission? I'm not aware of any Texas case that says you always have to re-notice an acceleration after rescission, unless there's a contractual obligation to do so. In fact, there is no obligation under law to give notice of acceleration when you've got a waiver provision like we do in this note, which is waiver of demand, waiver of presentment, all those kinds of waivers. So it's a matter of construction of the contract in totality, all the terms working together as we do under the rules of construction. I submit to the court that the district court went through that process, either apparently or presumptively, and got it right, that this contract does not require serial notices of acceleration, and it certainly does not require, doesn't even require a notice of acceleration as a predicate to filing suit by its terms. That's a separate provision. It says if I'm in default, you need to tell me, give me a chance to cure before you go off and file a suit. Well, he got those notices, and he never cured. He admittedly never cured. So I believe it's contract construction on that one, and in the totality of this agreement, including the waiver provisions, waiver of notice, et cetera, that the borrower's entered into, and the specific language of paragraphs 19, which is the notice of dispute, and 21, which is the acceleration paragraph, and 14, which is simply the manner of notice provisions, the trial court analyzed it correctly and found that there was no breach of the contract, and ergo there was no failure of condition precedent to filing a suit. So back then to what has been the primary argument from appellant throughout, and that is this constitutionally mandated provision issue. I don't read the Garofalo case the same way he does, obviously. It does say that there are certain terms and conditions that must be included, but it doesn't articulate which of the terms and conditions that you might find in 50A6 and elsewhere in that section 50A of the Constitution that do or do not fall within that constitutional mandate or the ones that are required. And I think if we read, once again, a construction approach, if we read the Constitution and the words that the drafters utilize there, you've got different sections. You've got A6 that goes A through Q, and then you've got the A6Q section that starts out with a predicate, it must be a loan in order to be foreclosure eligible, the term that perhaps my perspective a bit unfortunately that the Texas Supreme Court elected to use, but nonetheless a descriptive term. To be foreclosure eligible, there are certain requirements. And in Garofalo, in Wood, and in the one subsequent case that's from the Supreme Court that's interpreted at Strasburger v. Kyle, I believe it is, they use terminology like the Constitution describes. 50A6 describes the type of loan which is foreclosure eligible, which is compliant with. And you've got in Q, 50A6Q starts out with must be made on condition that. And I think it's material that the drafters then write a subset, some of which are duplicative, if you will, of other A, 50A, A through P sections, are replicated then under the on condition that. And I think that type of analysis where we distinguish between those things which you can't do, basically, and those things which you must do is an important distinction, and it's reiterated in the notice provision. Now, I'm not suggesting that the notice provision, which is in 50G, I'm not suggesting that that is the substantive law. Rather, it's just a context, part of the context. I think it was the duty case way back in the early days of litigation over home equity lending that said the notice provision is not the substantive one. You go back to the body in the prior portions to get your substantive law. Nonetheless, G actually goes through and also makes that same kind of a split, if you will. It, for example, says that you may not have a loan that up until January 1st of the coming year, there's a 3% limitation on the amount of fees. So you may not have a loan that exceeds the 3%. You may not have a loan that is secured by more than or a property other than your homestead. You can only have a loan that's made by an approved lender, all those kinds of things. And then a little bit deeper in to G, for example, G-5. This notice says that your loan, to be compliant, must provide that you receive your final loan application and all executed documents. Provide that the security instrument contain a disclosure that the loan is a loan defined by 50A6, Article 16 of the Texas Constitution, which, of course, ours does at multiple points. It must provide that when the loan is paid in full, you get a release. It must provide that within three days after closing, you can rescind. It must provide. So you've got a distinction there between the things that might, if the Texas Supreme Court addresses this further down the road, might be constitutionally required to actually be written into the documentation. Some things, I submit, will be, are constitutionally required, constitutionally mandated, in order to be foreclosure eligible. The Supreme Court of Texas is not, nor any other Texas court, not yet told us what that list is. It says, hey, you've got A through Q over here, and somewhere in there are things that are or are not. In fact, in the Garofalo case, which, if I recall correctly, was this court's, had sent certified questions over, it decided that that language, and I think it's clear from the drafting, that language that says you must put into your note this forfeiture language, that's one of the required. The Texas Supreme Court went in and addressed those questions, made some fairly broad statements, and then said let's now narrow this down to the questions before us and the provisions which apply. And they went straight then down to that language about forfeiture. It's one of those provides. It's one of those things that are mandated. It's one of those conditions that. Whereas the home equity, excuse me, the homestead ag exemption issue, which is the only issue that they've argued as an example, and let's be clear, there's no allegation, innuendo, suggestion that this residential piece of property in Travis County was ever ag exempt. There's no indication that it was ever ag exempt. It's just that we left those words out of the home equity lending documents. I submit to the court that's not where the Texas Supreme Court is going to take this, that if the Constitution means to require something, it will say so and has said so on condition that. This is not one of those on condition that. Total aside, not to affect the court's decision per se, but that ag exemption is repealed effective. Provision is repealed effective January 1 of 2018. Obviously, it was in place when this all the material facts that apply and remains in place today, but based on the vote last month, there will be no reference to an agricultural exemption exclusion for this. So, with that having been said, I believe that the contractual components of this are easily dealt with from the language of primarily the security agreement, but obviously the security agreement and the promissory note read together. I do not believe that there is a requirement in that contract. In fact, quite the contrary. I believe that the contract clearly says once I've given you notice of default and an opportunity to cure, I don't have to do it time after time after time. I don't believe that the rescission letter itself undermines that contractual right. There is no requirement that they get this notice of acceleration as a predicate to filing a suit found in the body of this promissory note and security agreement. I don't think there was contractual breach. I think the district court got it correct when it decided there was nothing shown that would constitute a failure of a condition precedent. Failure of condition precedent, that was what they alleged and what they've argued. This is not a contractual condition precedent that you get serial notices of default and opportunity to cure, serial notices of acceleration or notice of acceleration at all as a predicate to suit. So I would respectfully ask the Court to affirm the ruling and judgment of the district court. All right. Thank you, Mr. Connolly. Any other questions? Thank you. We have time for a vote. Your Honors, Counsel, I would like to read directly from Garofalo very briefly. This is in regards to whether the loan. Opposing counsel kept focusing on whether the note had to have the terms. We've never said the note had to have the terms. The Constitution, the Supreme Court cases made it clear that the loan must be made on those terms. The loan consists of many documents, not just the note. So we disagree that there's a requirement that it be in the note, and we never said that. But it says right here in Garofalo, We first observed that Section 50A does not directly create, allow, or regulate home equity lending. Nowhere does it say all home equity loans must include the constitutional terms and conditions, nor does it prohibit loans made on other terms. It simply describes what a home equity loan must look like if the lender wants the option to foreclose on a homestead upon borrower default. As to constitutional rights, Section 50A creates but one, freedom from forced sale, to satisfy debts other than those described in its exceptions. The relevance of these terms and conditions is therefore contingent on the fundamental guarantee of Section 50A, that the homestead is protected from forced sale except for a home equity loan that includes the terms outlined in Section 50A6A through P and is made on the condition that it also includes the provisions set forth in Sections 50A6Q1 through 11. It couldn't get any more clear. That's the Texas Supreme Court. It's directly on point on this issue. It's kind of an absurd interpretation if that's really what was intended because those terms apply only to agricultural loans. There wouldn't be any reason at all to put it into a document for a loan that's not agricultural. Respectfully, Your Honor, I disagree. The conditions have to be in there. That's akin to saying, well, unless there are two home equity loans, we really don't need the provision that says you can't foreclose if there's two home equity loans. This is an objective threshold because the homeowners don't have any constitutional cause of action, which is one of the other things we discovered in this case after those decisions. They can only enforce the contract. And what it says is in order to have a foreclosure-eligible loan, the lien must include these terms. It must be made on these terms. And what I hear opposing counsel in the court saying is, well, we can second-guess that and make it moot by saying, well, it's not an agricultural loan, therefore we don't need to have this term in there. That's simply not what the Texas Supreme Court said. It must be made on these terms and conditions. They must be in the loan documents. I would also like to address the condition precedent issue. Pardon me, one more thing. It's true that there was a constitutional amendment that was voted on. From my perspective, it's because there's a lot of these loans out there where they improperly extended the lien to agricultural property. However, the fact that voters approved a constitutional amendment, that only goes into effect January 1, 2018, and it's only applicable to loans or refinances made after that date. This loan doesn't fall into that category. Mr. Conner isn't relying on that. He gave us that just for our information. I understand, but it's not applicable to this loan. On the condition precedent issue, the Court asked about notices of acceleration. I'm aware of another case, but a pretty important and prevalent case in foreclosure cases is Holy Cross Church of Christ. It's a Supreme Court case. It came out in 2001. It makes it very clear that foreclosure requires notice of default, intent to accelerate, and a notice of acceleration. It requires both. So there's the court case that requires it. If you rescind the notice of acceleration, Texas home equity loans are kind of a subset of all Texas loans you have. If you're going to say that, well, we give you notice one time on acceleration, then we can rescind it, but we don't have to give it to you again, that means a lender can go out and post on a conventional loan, go out and post a notice of sale, even though the Supreme Court has said you have to have both a notice of default, intent to accelerate, and a notice of sale. I would like to point to, I heard a couple of times, that there was no contractual requirement for a notice of acceleration. That's not the way I read this. In the MSJ briefing, and I believe in the Apley briefing, the Apleys omitted the important part of paragraph 19, which is the notice of grievance and requirement of pre-suit notice of sale. In the end of that paragraph, it says, the notice of acceleration and opportunity to cure given to borrower pursuant to section 21 and the notice of acceleration given pursuant to another section, which isn't relevant, shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this section. Your time has expired now, Mr. Chairman. Oh, I apologize.